Dear Ms. Cavanaugh:
This office is in receipt of your opinion request in which you ask us to consider numerous inquiries concerning the constable in your district who had a stroke and is thus unable to perform his duties. You also advise us that this constable was elected to another term. Specifically, you asked:
 1. Can a constable who is unable to perform his duties for health related reasons and who was elected to another term be allowed to begin the new term of office?
If the constable you mention is not able to take office for his next term, a vacancy in the office would exist, in which case a new constable would be appointed. LSA-R.S. 18:581 defines a vacancy in office. It provides:
 "(1) A `vacancy' occurs in an elective office
when the office is or will be unoccupied by reason of the death of the official who was elected to the office, or by reason of his retirement or resignation, removal from office by any means, failure to take office for any reason, or when it becomes certain that the person elected to the office will not take the office on the day when the term for which he was elected commences, or when the person elected to or holding the office no longer meets the residence or domicile requirements of that office, any declaration of retention of domicile to the contrary notwithstanding." (Emphasis added)
Failure to take office would occur if the constable in question is not able to take his oath of office. The requirement that an elected official take an oath of office is found in La. Const. Art. X. § 30, which provides:
 "Every official shall take the following oath or affirmation: `I, . . ., do solemnly swear (or affirm) that I will support the constitution and laws of the United States and the constitution and laws of this state and that I will faithfully and impartially discharge and perform all the duties incumbent upon me as . . ., according to the best of my ability and understanding, so help me God.'"
However, there is no prohibition of the constable taking the oath of office should he be physically able to do so. It is only when an officer is not physically able to take an oath of office that a vacancy occurs. As long as the constable is not removed from office as provided by law (discussed infra), or does not fail to take office as required by law, he is allowed to continue his office and to begin his new term.
 2. Is there any procedure for removing a constable from office who cannot reasonably be expected to resume his duties?
In addressing this inquiry, we look first to La. Atty. Gen. Op. No. 88-424. This office stated, "Article X, Sections 24, 25, and26 of the Louisiana Constitution provide that elected officials may be removed from office by impeachment by the Legislature, by suit for removal and by recall election. . . The jurisprudence of the Louisiana courts consistently holds that in the case of elected officers, the constitutional methods of removal from elected office are exclusive." A copy of the cited Opinion will be sent along with this current Opinion.
The procedure provided for in Art. X § 24 is impeachment. The section provides:
 "(A) Persons Liable. A state or district official, whether elected or appointed, shall be liable to impeachment for commission or conviction, during his term of office of a felony or for malfeasance or gross misconduct while in such office.
 (B) Procedure. Impeachment shall be by the House of Representatives and trial by the Senate, with senators under oath or affirmation for the trial. The concurrence of two-thirds of the elected senators shall be necessary to convict. The Senate may try an impeachment whether or not the House is in session and may adjourn when it deems proper. Conviction upon impeachment shall result in immediate removal from office. Nothing herein shall prevent other action, prosecution, or punishment authorized by law."
The current situation you are faced with is not one where impeachment would be a viable course of action, as the grounds required have not be satisfied. The constable you speak of has not been accused of a felony, malfeasance in office, or gross misconduct, therefore impeachment would not apply.
The suit for removal provided for in Art. X § 25, is in accordance with Paragraph A of Art. X § 24. An officer can only be removed by suit under this section if he is liable under paragraph A of the previously cited section, so this section would not apply to the current situation.
The final procedure for removing an officer provided for in the Constitution is found in Art. X § 26. This section provides,
 "The legislature shall provide by general law for the recall by election of any state, district, parochial, ward or municipal official except judges of the courts of record. The sole issue at a recall election shall be whether the official shall be recalled."
The procedure providing for recall elections is found in LSA-R.S.18:1300.1 et seq. The procedure is a lengthy one, but may be used in this situation.
 3. If he cannot be removed from office, may he continue to draw his salary from parish funds?
When an officer takes an oath of office, he is thereby instituted into that office. He is therefore entitled to the compensation and/or salary provided for that office until he no longer holds or is removed from the said office. Thus, as long as a constable is not formally removed from office, he may continue to draw his salary from parish funds. He may also continue to draw his state supplemental pay as long as he meets the requirements for receiving such pay.
 4. Can a Justice of the Peace appoint a special deputy constable for an indefinite period until a constable is able to return to office?
Regarding the appointment of constables, please note La. Atty. Gen. Op. No. 94-489. In that opinion, we advised a justice of the peace, that when a vacancy occurs in the office of constable, it is the governing body of that parish that appoints a replacement. Under no circumstance is the justice of the peace for the same ward as the constable able to appoint a replacement.
Regarding the appointment of a deputy constable, you mentioned that you appointed a special deputy constable under LSA-R.S.13:3477. The section provides:
 "In case of the inability or refusal to act on the part of the constable or a duly appointed deputy constable because of relationship, sickness, or form other causes in civil suits, and in case of the execution of conservatory writs in civil suits, the justices of the peace may employ either the sheriff or his deputy or appoint a special deputy constable to execute all orders, citations, summons, seizures, and writs."
This section is applicable only in situations where the constable is not allowed or not able to make service of process for some reason. This section does not give a justice of the peace the authority to appoint a replacement constable. It does give the justice of the peace the authority to appoint a special deputy constable to execute orders, citations, summons, seizures, and writs.
We also advise you of LSA-R.S. 13:3478. It provides:
 "When there is a constable or duly appointed deputy constable not disqualified to act because of relationship, or unable to act on account of sickness or other cause, and who is willing to act, and who is personally present when conservatory writs are sued out, then and in these cases, the justice of the peace for whose ward said constable shall have been elected or appointed and qualified, shall employ said constable or his duly appointed deputy constable to the exclusion of the sheriff or his deputy, or a special deputy constable, to execute all orders, citations, summons, seizures, and writs in civil cases, and in such cases services made by other than said constable or his duly appointed deputy constable shall be void and of no effect." (Emphasis added)
 5. Can an appointed deputy constable attend the Attorney General Constable/Justice of the Peace school? If he can, may he also draw the $50.00 per month the state pays to elected constables?
The law regarding the Justice of the Peace training course is found in LSA-R.S. 49:251.1. This statute gives general requirements and guidelines for the attorney general when conducting these conferences. As these conferences are designed to educate and train the justices of the peace and constables in the execution of their duties, and as your special deputy constable will be performing such duties until the elected constable may return to service, it is in the public's best interest that your special deputy constable attend the attorney general's training conference.
Regarding the state supplemental pay, LSA-R.S. 13:2583.1 regards deputy constables and their compensation in those parishes having a population in excess of four hundred thousand. However, as of the last census, East Baton Rouge Parish had a population of approximately 380,000, therefore this statute does not apply. There are no other provisions which allow a special deputy constable to receive compensation from the state or parish, thus he will receive no such compensation.
We hope the foregoing sufficiently answers your inquiries. Should you have any further questions, please contact this office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: _________________________ J. RICHARD WILLIAMS Assistant Attorney General
RPI:JRW:lrg
Enclosures